**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
──────────────────────────────────

NANJING TEXTILES IMP/EXP CORP., LTD.,

                Plaintiff,

    - against –

NCC SPORTSWEAR CORP., SUNSHINE APPAREL
GROUP LLC, MARVIN NEWMAN, CHARLES SOBEL,
ROBERT CESARIA, ISRAEL DISCOUNT BANK,
IDB CAPITAL CORP., IDB FACTORS, JOHN
DOE, ABC CORP., and XYZ LLC,

                Defendants.
──────────────────────────────────

**06 Civ. 52 (JGK)**

**MEMORANDUM**
**OPINION AND ORDER**

**JOHN G. KOELTL, District Judge:**

    This diversity action arises from a commercial dispute involving the delivery of and payment for certain apparel. The plaintiff, Nanjing Textiles Imp/Exp Corp., Ltd. ("Nanjing"), filed a complaint on January 4, 2006 and an Amended Complaint ("Compl.") on January 25, 2006 asserting a number of claims for, among other things, breach of contract and fraud. The plaintiff also sought preliminary relief to seize apparel in the defendants' possession and for an attachment. On August 4, 2006, upon discovering new evidence, the plaintiff again sought preliminary relief in the form of an attachment and additionally sought a preliminary injunction freezing defendants' assets.

    Defendants NCC Sportswear Corp. ("NCC"), Sunshine Apparel Group LLC, Charles Sobel, and Robert Cesaria (collectively, the "NCC Defendants") have opposed the plaintiff's request for preliminary relief and moved to dismiss the Amended Complaint.

Defendants Israel Discount Bank of New York, IDB Capital Corp., and IDB Factors (collectively, the "IDB Defendants" or "IDB") similarly oppose the request for preliminary relief and seek to dismiss the Amended Complaint against them.

## I.

In October 2004, Nanjing began doing business with NCC. (Compl. ¶ 11.) NCC ordered custom made clothing from Nanjing in China (Id. ¶ 12), and Nanjing delivered the apparel to NCC in the United States (Id. ¶ 20). Between October 2004 and June 2005, Nanjing delivered $2,369,848.00 worth of custom made clothes to NCC. (Id. ¶ 27.) NCC did not pay $106,413.00 of this amount based on allegations that the delivered goods failed to comply with specifications. (Id.)

Between June 9 and November 14, 2005, Nanjing delivered an additional twenty-one shipments of clothes for an outstanding balance of $1,553,780.31. (Id. ¶ 29.) It was the practice for NCC to pay Nanjing for each shipment three months after NCC's receipt of the shipment. (Id. ¶ 30.) Beginning in at least September 2005, Nanjing began to demand payment and NCC began to offer to pay only a small fraction of the outstanding balance. (Id. ¶ 31.) Nanjing stopped delivering clothes to NCC. (Id. ¶ 32.) As of January 3, 2006, NCC allegedly owed Nanjing $1,553,780.31 and Nanjing was storing at its expense $293,358.50 worth of custom made clothes for NCC. (Id. ¶¶ 33, 34.)

NCC disputes that it did business with Nanjing.  NCC maintains that it always did business only with a company called Union Apparel Group, Ltd. ("Union") and not Nanjing.  (Decl. of Charles Sobel, dated Jan. 5, 2006, ¶¶ 3-6 ("Sobel 1/5/06 Decl.").)  Union is a New York corporation (Compl. ¶ 14), while Nanjing is a Chinese corporation with its principal place of business in China (See Compl. ¶ 5).  NCC is a New York corporation with its principal place of business in New York. (See id. ¶ 6.)

On December 28, 2005, NCC filed suit against Nanjing and Union in the Supreme Court of the State of New York.  (Sobel 1/5/06 Decl. Ex. A.)  NCC alleged, among other things, that the defendants breached their agreement to provide goods to NCC and provided defective goods and that the defendants made misrepresentations to NCC.  Nanjing then filed this action on January 4, 2006 asserting various causes of action against NCC and seeking to recover the amount owed for the goods together with consequential damages.

Apart from NCC, Nanjing has sued several other defendants. Defendants Marvin Newman and Robert Cesaria are allegedly joint owners of NCC, and defendant Charles Sobel is an officer of NCC and Nanjing's contact at NCC.  (Compl. ¶ 7.)  Nanjing alleges that Sunshine Apparel Group, LLC ("Sunshine") is a corporation that NCC does business as.  (Id. ¶ 6.)  IDB Factors had a

factoring agreement with NCC. (See Id. ¶ 22, Ex. D.) Under the
factoring agreement, IDB Factors would purchase NCC's accounts
receivable at a discounted rate. (Id. ¶ 18.) NCC would then
use the money it received from IDB Factors to pay for the
apparel from Nanjing. (Id. ¶ 19.) The third-party customers
purchasing the apparel from NCC would then pay IDB Factors
directly. (Id.) Based on this relationship, Nanjing asserts a
number of causes of action against IDB Factors and the other IDB
Defendants. Israel Discount Bank of New York and IDB Factors
are allegedly subsidiaries of IDB Capital Corp, a New York
corporation. (Id. ¶ 8.) There is complete diversity of
citizenship between Nanjing, an alien, and all of the defendants
who are citizens of various states.

On January 6, 2006, Nanjing filed an Order to Show Cause
seeking to reclaim the apparel it had delivered to NCC and
further seeking to attach certain of defendants' assets.
Nanjing also sought a temporary restraining order to prevent
defendants from transferring funds received from the sale of
Nanjing's apparel pending the Court's resolution of the Order to
Show Cause. (See Order to Show Cause, Jan. 6, 2006.) The Court
denied Nanjing's request for a temporary restraining order.
(See Jan. 6, 2006 Hr'g Tr. 27-29.)

The NCC Defendants and the IDB Defendants each filed
oppositions to Nanjing's Order to Show Cause and cross-moved to

4

dismiss Nanjing's Amended Complaint.  On August 4, 2006, while
these motions were still pending, Nanjing filed another Order to
Show Cause seeking to attach and freeze the assets of defendants
Sobel, Cesaria, NCC, and Sunshine Apparel Group LLC.  Nanjing
claimed new facts that allegedly showed that those defendants
had been fraudulently disbursing and secreting assets.  (See
Aff. of Jenny Chen, dated Aug. 2, 2006 ("Chen 8/2/06 Aff."), ¶¶
4, 8, 10.)  The new information was that NCC is no longer in
business and that its offices are closed with a notice that the
landlord has reclaimed the premises.  That day, the Court
granted a temporary restraining order against the transfer of
assets by those defendants, which it vacated on August 8, 2006
following a hearing on the second Order to Show Cause.

## II.

Nanjing's Order to Show Cause dated January 6, 2006 seeks
two forms of preliminary relief.  First, pursuant to NY UCC § 2-
702(2), Nanjing seeks to seize the apparel that it delivered to
NCC.  That statute provides a limited right to reclamation for
sellers in cases where a buyer has misrepresented its solvency.
Second, Nanjing seeks an order of attachment against the
defendants' assets pursuant to NY CPLR § 6201.  In Nanjing's
second Order to Show Cause, dated August 4, 2006, Nanjing renews
its request for an order of attachment based on alleged new

evidence and further requests that the Court grant a preliminary
injunction against the transfer of assets of the NCC Defendants.

**A.**

NY CPLR § 7102 governs Nanjing's request for the seizure of
the apparel.[1]  Section 7102 creates the procedural mechanism for
the seizure of a chattel in New York.  Section 7102(d) provides
that an order to seize chattels may issue upon the presentation
of an affidavit and undertaking and upon a finding that it is
probable that plaintiff will succeed on the merits and that the
facts are as stated in the affidavit.  In the affidavit, the
plaintiff must demonstrate, among other things, that it "is
entitled to possession by virtue of the facts set forth" and
that "the chattel is wrongfully held by the defendant named."
See NY CPLR § 7102(c).  The plaintiff bears the burden of
establishing the grounds for the seizure order.  NY CPLR §
7102(d).

The plaintiff alleges that it is entitled to possession of
the goods under NY UCC § 2-702(2), which provides sellers with a
limited reclamation right in cases where a buyer receives goods
while insolvent.  An "insolvent" person is one "who either has
ceased to pay his debts in the ordinary course of business or
cannot pay his debts as they become due or is insolvent within

---

[1] Federal Rule of Civil Procedure 64 provides that the law of the state in
which the district court is held governs all remedies for the seizure of
property for the purpose of securing satisfaction of the judgment.

the meaning of the federal bankruptcy law." NY UCC § 1-201(23).
NY UCC § 2-702(2) provides:

> Where the seller discovers that the buyer has received
> goods on credit while insolvent he may reclaim the
> goods upon demand made within ten days after the
> receipt, but if misrepresentation of solvency has been
> made to the particular seller in writing within three
> months before delivery the ten day limitation does not
> apply. Except as provided in this subsection the
> seller may not base a right to reclaim goods on the
> buyer's fraudulent or innocent misrepresentation of
> solvency or of intent to pay.

The first part of section 2-702 provides that if a buyer
receives goods on credit while insolvent, the seller may reclaim
those goods upon demand within ten days of the buyer's receipt
of the goods.  Nanjing does not allege that they made any such
demand within the ten day limit, and thus this provision does
not apply.  The second part of section 2-702 provides that the
ten-day limit is inapplicable in cases where a buyer has
misrepresented its solvency in writing within three months
before delivery. Nanjing argues that this provision applies and
that it is thus entitled to reclaim the apparel from defendants.

At they very least, NY UCC § 2-702(2) requires Nanjing to
establish (1) that the defendant was insolvent when it received
the goods and (2) that it misrepresented its solvency in writing
within three months prior to delivery.  The only defendant to
which this provision might possibly apply is NCC. Nanjing has
failed to adduce sufficient evidence to establish its right to
reclamation against NCC.

First, Nanjing has failed to offer evidence that NCC was insolvent at the time it received the apparel shipments up to October 2005.  At the time the original motion for seizure was briefed, Charles Sobel, NCC's President, stated unequivocally in February 2006 that NCC was solvent and had no plans to liquidate assets to avoid any claims.  (See Decl. of Charles Sobel, dated Feb. 17, 2006 ("Sobel 2/17/06 Decl."), ¶¶ 45-52.)  Sobel swore that NCC employed more than 35 individuals and had never transferred or dissipated assets to avoid the claims of a creditor.  (Id. ¶ 49.)  The only evidence of insolvency to which Nanjing pointed was three dishonored checks in a total amount of $171,207.49.  (Decl. of Aiping "Jenny" Chen, dated Mar. 9, 2006 ("Chen 3/9/06 Decl."), ¶ 14.)  However, as Sobel points out, each of these checks was in fact replaced by wire transfer and each of the checks were for prior shipments of clothes for which Nanjing was paid.  (Sobel 2/17/06 Decl. ¶ 46.)  Thus, Nanjing failed to prove that NCC was insolvent at the time it received the shipments of clothes for which it claims it was not paid.

Second, even assuming NCC was insolvent at the time it received the goods, Nanjing has failed to prove that NCC misrepresented its solvency in writing.  Nanjing argues that NCC misrepresented its solvency in writing through the tender of the three dishonored checks and NCC's signature on shipping invoices, which represented that the goods were "received in

good order," coupled with oral promises to pay. (See Aff. of Aiping "Jenny" Chen, dated Jan. 3, 2006 ("Chen 1/3/06 Aff."), Ex. B.) On these facts, Nanjing has failed to produce sufficient evidence that the dishonored checks or the shipping invoices constituted misrepresentations of solvency.

Standing alone, a check makes no representation of solvency. A solvent party, while perfectly willing and able to satisfy all outstanding debts, may issue a check that is later dishonored because the particular account from which the check is drawn contains insufficient funds. Conversely, an insolvent party may issue a check that is later honored. The insolvent party may have sufficient funds in a particular account to satisfy a particular debt, yet still face debts that exceed its overall assets. As such, while the check may contain a representation that that drawer will pay the stated sum, it does not make a broader representation regarding the drawer's solvency. Similarly, the statement that goods are "received in good order" does not alone have any relationship to solvency. The question then is whether the surrounding circumstances supply any basis for inferring that the checks and the shipping invoices were in fact representations of solvency.

Nanjing has failed to provide any evidence that solvency was an issue during its business relationship with NCC in the three months prior to the delivery of the goods. In the absence

of any evidence that solvency was an issue between the parties, the Court cannot find that the shipping invoices and checks – all ordinary incidents of a standard commercial transaction – are representations of solvency.[2] Cf. Mullen v. Sweetheart Cup Corp. (In re Bar-Wood, Inc.), 15 UCC Rep. 828, 1974 WL 21662 (Bankr. S.D. Fla. Sep. 24, 1974) ("There must be something more such as an intention of the parties to treat the checks as a representation of solvency, or a reliance on them as such a representation."); In re Regency Furniture, Inc., 7 UCC Rep. 1381, 1970 WL 12546 (Bankr. E.D. Tenn. July 15, 1970) (finding that several purchase orders were not written misrepresentations of solvency); but cf. Liles Bros. & Son v. Wright, 638 S.W.2d 383, 386-87 (Tenn. 1982) (provision of a post-dated check under the facts and circumstances of the case found to be a representation of solvency).

For these reasons, Nanjing's request for an order of seizure is **denied.**

**B.**

Nanjing also seeks to "freeze the bank accounts and assets of the defendants in the amount of $1,660,193.31." (Order to Show Cause, Jan. 6, 2006.) Pursuant to Federal Rule of Civil Procedure 64, New York law governs Nanjing's request for an order of attachment. Under New York law, to obtain an order of

---

[2] An oral promise to pay is not a misrepresentation of solvency "in writing"

attachment, the moving party must demonstrate that (1) it has a
cause of action for a money judgment, (2) there is a probability
of success on the merits, (3) one or more of the enumerated
statutory grounds for attachment under NY CPLR § 6201 exists,
and (4) the amount demanded exceeds the amount of all
counterclaims known to the party seeking the attachment.  See NY
CPLR §§ 6201, 6212(a); JSC Foreign Econ. Ass'n Technostroyexport
v. Int'l Dev. and Trade Servs., Inc., 306 F.Supp.2d 482, 485
(S.D.N.Y. 2004); Trafalgar Power, Inc. v. Aetna Life Ins. Co.,
131 F.Supp.2d 341, 346 (N.D.N.Y. 2001); Bank of Leumi Trust Co.
of New York v. Istim, Inc., 892 F.Supp. 478, 481 (S.D.N.Y.
1995).

      Nanjing relies on two of the statutory grounds enumerated
in NY CPLR § 6201.  Against Sobel alone, Nanjing relies on NY
CPLR § 6201(1), which permits an order of attachment when "the
defendant is a nondomiciliary residing without the state...."
As against all of the defendants, Nanjing relies on NY CPLR §
6201(3), which provides that a court may grant an order of
attachment where "the defendant, with intent to defraud his
creditors or frustrate the enforcement of a judgment that might
be rendered in plaintiff's favor, has assigned, disposed of,
encumbered or secreted property, or removed it from the state or
is about to do any of these acts...."

as required by the statute.

11

"[T]he provisional remedy of attachment is a particularly harsh remedy, and is a creature of statute in derogation of the common law and is thus to be strictly confined to its statutory authorization which is construed against the one seeking the attachment." Ashland Oil, Inc. v. Gleave, 540 F.Supp. 81, 83 (W.D.N.Y. 1982). "Fraud cannot be inferred; it must be proved." Anderson v. Malley, 181 N.Y.S. 729, 730 (App. Div. 1920). The intent to defraud cannot be presumed from the mere fact that the defendant has liquidated or disposed of some of its business assets. See, e.g., Ashland Oil Inc., 540 F.Supp. at 84; Eaton Factors Co. v. Double Eagle Corp., 232 N.Y.S.2d 901, 903 (App. Div. 1962) (per curiam); Sylmark Holdings, Ltd. v. Silicone Zone Intern. Ltd., 783 N.Y.S.2d 758, 774 (Sup. Ct. 2004). The moving papers must contain evidentiary facts, as opposed to mere conclusion, to support the allegations of fraud. See Sylmark Holdings, Ltd., 783 N.Y.S.2d at 774. Finally, the property at issue must be that of the defendants. See Eaton Factors Co., 232 N.Y.S.2d at 903.

Applying these strict standards for obtaining an order of attachment, Nanjing has failed to demonstrate that an order of attachment is appropriate against any of the defendants. First, as to the IDB Defendants, Nanjing has offered no evidence to suggest that the IDB Defendants have been shifting assets with the intent to defraud creditors or frustrate the enforcement of

a judgment.  Further, as discussed below, Nanjing has at this point failed properly to allege any cause of action against IDB and thus appears unlikely to succeed on the merits.  For these reasons, Nanjing's request for an order of attachment against the IDB Defendants is denied.

Nanjing has also failed to prove that the remaining defendants – NCC and the individual defendants Sobel, Cesaria, and Newman – have fraudulently dissipated assets or removed assets with the intent to frustrate the enforcement of a judgment.  In Nanjing's original request for an order of attachment on January 6, 2006, Nanjing offered no evidence that any of the defendants had assigned, disposed of, encumbered or secreted property, or removed any property from the state.  Without evidence of the defendants' dissipation of assets, Nanjing cannot establish a basis for attachment under NY CPLR § 6201(3).

Nanjing made a second request for an attachment dated August 4, 2006, in which it purported to offer additional evidence of the intent of the NCC Defendants to defraud their creditors and frustrate the enforcement of a judgment.  Nanjing learned that "NCC had gone out of business."  (Chen 8/2/06 Aff. ¶ 5.)  Nanjing also discovered that NCC had been evicted from its premises due to a judgment from the landlord/tenant court. (Id. ¶ 8.)  Based on NCC's prior representations that it was

solvent and had no intent to liquidate assets to avoid any claims (See, e.g., Sobel 2/17/06 Decl., ¶¶ 45-52.), Nanjing argues that these new developments show a clear intent to defraud creditors or frustrate the enforcement of a judgment, such that an attachment is appropriate.

NCC responds that the sudden reversal of its financial condition arose from IDB's decision to discontinue its factoring relationship with NCC. (Decl. of Charles Sobel, dated Aug. 8, 2006 ("Sobel 8/8/06 Decl."), ¶¶ 3, 5.) Both Sobel and Cesaria maintain that they have never transferred any of NCC's assets outside the ordinary course of business. (Sobel 8/8/06 Decl. ¶ 14; Decl. of Robert Cesaria, dated Aug. 8, 2006 ("Cesaria 8/8/06 Decl."), ¶ 7.) They also state that they have never taken any steps unlawfully to defeat the rights of a creditor or place assets beyond the reach of any creditor. (Sobel 8/8/06 Decl., ¶ 15; Cesaria 8/8/06 Decl., ¶ 8.)

Even considering this evidence, Nanjing has still failed to prove that NCC has dissipated assets with a fraudulent intent or an intent to frustrate the enforcement of a judgment. Fraudulent intent cannot be inferred from the mere fact that NCC has liquidated or disposed of some of its business assets. See, e.g., Ashland Oil, Inc., 540 F.Supp. at 84; Eaton Factors, Inc., 232 N.Y.S.2d at 903. NCC has provided a reasonable explanation for the sudden change in its financial condition. Although

Nanjing alleges a conspiracy between NCC and the IDB defendants, it has not offered any evidence of such a conspiracy. Conclusory allegations cannot supply the basis for granting the harsh remedy of attachment.

Nanjing argues that NY CPLR § 6201(1) provides an additional basis for attachment against Sobel because Sobel lives in New Jersey and is thus a nondomiciliary residing outside New York state. (Chen 8/2/06 Aff. ¶ 11.) However, for the reasons stated below, Nanjing has failed to plead any cause of action against Sobel or the other individual defendants Cesaria and Newman. Therefore, Nanjing cannot demonstrate a probability of success on the merits against Sobel or the other individual defendants, and an attachment remedy is not available against them.

In sum, both of Nanjing's requests for orders of attachment dated January 6, 2006 and August 4, 2006 are **denied.**

### C.

In the Order to Show Cause dated August 4, 2006, Nanjing also seeks a preliminary injunction freezing defendants' assets. "[A] party seeking a preliminary injunction must demonstrate (1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of

hardships tipping decidedly toward the party requesting the preliminary relief." Federal Express Corp. v. Federal Espresso, Inc., 201 F.3d 168, 173 (2d Cir. 2000); JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. and Trade Servs., Inc., 306 F.Supp.2d 366, 387 (S.D.N.Y. 2003).

The Court's equitable power to issue a preliminary injunction to prevent a defendant from transferring assets does not extend to an action for money damages where the plaintiff claims no lien or equitable interest in the assets sought to be enjoined. See Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 333 (1999). "[B]efore judgment (or its equivalent) an unsecured creditor has no rights at law or in equity in the property of his debtor." Id. at 330. "The requirement that the creditor obtain a prior judgment is a fundamental protection in debtor-creditor law-rendered all the more important in our federal system by the debtor's right to a jury trial on the legal claim." Id.

In this case, Nanjing brings an action at law primarily for a money judgment against the defendants. Nanjing has asserted a reclamation claim under NY UCC § 2-702(2). However, as discussed above, the plaintiff has failed to demonstrate that it actually possess any equitable interest in the apparel. Nanjing also seeks a constructive trust based on its theory of unjust enrichment. However, despite the fact that Nanjing may have

some interspersed equitable claims, Nanjing's suit is at base a classic legal action for breach of contract for which it is primarily seeking monetary relief.  Plaintiff stands in the position of an unsecured creditor, seeking satisfaction in the form of money judgment for a debt owed.  The Court has no power to grant a preliminary injunction in this case.

Even assuming it was within this Court's power to grant the relief that Nanjing requests, this is not an appropriate case for a preliminary injunction.  For the reasons discussed below, the plaintiff has failed to show a likelihood of success on the merits on any of its stated causes of action other than those sounding in contract and quasi-contract asserted against NCC. Furthermore, in considering the effects of freezing NCC's assets and balancing the equities, such a freeze would decidedly thwart the efforts of IDB, who has a perfected security in NCC's assets, to exercise its rights as a secured creditor. Therefore, the balance of hardships does not tip in favor of Nanjing, despite the harm it alleges it will suffer if the preliminary injunction is not granted.  For these reasons, Nanjing's request for a preliminary injunction is **denied.**

### III.

The defendants have moved to dismiss Nanjing's Amended Complaint.  Initially, the NCC Defendants argue that the Amended Complaint should be dismissed for failure to join an

indispensable party and because Nanjing lacks standing to assert the claims in the Amended Complaint.

## A.

The NCC Defendants argue that this action should be dismissed because Nanjing failed to join Union, which NCC claims is an indispensable party whose joinder would destroy complete diversity, the basis of the Court's subject matter jurisdiction. The NCC Defendants argue that Union should be a plaintiff in this action but, because it is a New York corporation, it would destroy diversity jurisdiction in view of the presence of defendants who are citizens of New York.

Federal Rule of Civil Procedure 19 sets up a two-prong test for determining whether an action must be dismissed for failure to join an indispensable party.[3]  See <u>Viacom Int'l, Inc. v.</u>

---

[3] Federal Rule of Civil Procedure 19 provides:

(a) <u>Persons to be Joined if Feasible.</u> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.

(b) <u>Determination by Court Whenever Joinder not Feasible.</u> If a

<u>Kearney</u>, 212 F.3d 721, 724 (2d Cir. 2000); <u>Associated Dry Goods</u>
<u>Corp. v. Towers Financial Corp.</u>, 920 F.2d 1121, 1123 (2d Cir.
1990). The first prong of the test, embodied in Rule 19(a),
determines whether a party is necessary, such that the party
should be joined if feasible. <u>Associated Dry Goods</u>, 920 F.2d at
1123. If the court determines that a party is necessary under
Rule 19(a) but cannot be made a party, it then proceeds to the
second step in the analysis and, applying Rule 19(b), inquires
whether "in equity and good conscience, the action should
proceed in the necessary party's absence." <u>Id.</u> at 1124.

The Second Circuit Court of Appeals has cautioned against
relying on a "putative answer" or "proposed, but not yet pled,
third-party claims" to determine whether a party is
indispensable for the purposes of Rule 19. <u>Id.</u> In general, in
determining whether a party is necessary under Rule 19, a court
should "base its decision on the pleadings as they appear at the
time of the proposed joinder." <u>Id.</u> (quoting C. Wright & A.
Miller, 7 <u>Federal Practice & Procedure</u> § 1604, at 40 (1986)).

---

person as described in subdivision (a)(1)-(2) hereof cannot be
made a party, the court shall determine whether in equity and
good conscience the action should proceed among the parties
before it, or should be dismissed, the absent person being thus
regarded as indispensable. The factors to be considered by the
court include: first, to what extent a judgment rendered in the
person's absence might be prejudicial to the person or those
already parties; second, the extent to which, by protective
provisions in the judgment, by the shaping of relief, or other
measures, the prejudice can be lessened or avoided; third,
whether a judgment rendered in the person's absence will be
adequate; fourth, whether the plaintiff will have an adequate
remedy if the action is dismissed for nonjoinder.

Here the Court has only the NCC Defendants' motion papers and attached affidavits and exhibits with which to determine whether Union is in fact a necessary party. The parties vigorously dispute Union's status in this action. The NCC Defendants contend that they contracted with Union, and not Nanjing. They point to the fact that the invoices for the goods were issued in the name of Union, and not Nanjing, and they paid Union and not Nanjing for the goods. (See Sobel 2/17/06 Decl. ¶¶ 5-6.) They argue that Union is an indispensable party because Union was involved with the determination of whether chargebacks against the amount allegedly owed were appropriate. (Id. ¶¶ 15-40.) The NCC Defendants allege that the only party with a possible claim is Union and that they have a claim against Union which they are asserting in state court.

Nanjing responds that it is the proper party to the contracts for the purchase and delivery of the goods. It points to the fact that the purchase orders are in the name of Nanjing, and not Union, and it explains that Union is a corporation without employees or assets and is organized solely to facilitate payments to Nanjing. (Chen 3/9/06 Aff. ¶¶ 3-4, Ex. B, C.) There is insufficient evidence for the Court to resolve the factual dispute at this preliminary stage concerning whether Union is a necessary party within the meaning of Rule 19(a).

Moreover, whatever the ultimate resolution of whether Union is a necessary party for the purposes of Rule 19(a), the NCC Defendants have failed to show that this action should be dismissed for failure to join an indispensable party under Rule 19(b).

The Second Circuit Court of Appeals has stated that "the Rule 19(b) notion of equity and good conscience contemplates that the parties actually before the court are obliged to pursue any avenues for eliminating the threat of prejudice." Associated Dry Goods Corp., 920 F.2d at 1125 (quoting C. Wright and A. Miller, 7 Federal Practice & Procedure § 1608, at 112-13) (emphasis in original). In Associated Dry Goods, the court held that where a defendant had the ability to assert a claim against an alleged indispensable party, a court could not in equity and good conscience dismiss the suit for failure to join that party. Id. at 1123. That court also cited a decision of the Fifth Circuit Court of Appeals for the proposition that an absent party is not indispensable when the defendant may nonetheless implead that party. Id. at 1124 (citing Boone v. General Motors Acceptance Corp., 682 F.2d 552, 553 (5th Cir. 1982)).

Nothing in the NCC Defendants' motion papers indicate that they cannot eliminate any potential prejudice by impleading Union. Based on the allegations in the NCC Defendants' motion papers, it is likely that the Court would possess supplemental

jurisdiction pursuant to 28 U.S.C. § 1367 over any claims brought against Union as a third-party defendant arising out of this transaction.  See, e.g., Viacom, 212 F.3d at 726-28; Philadelphia Indem. Ins. Co. v. Horowwitz, Greener & Stengel, LLP, 379 F.Supp.2d 442, 445 n.1 (S.D.N.Y. 2005); CCC Ins. Co., Ltd. v. The Brooklyn Hosp. Ctr., No. 03 Civ. 3093, 2004 WL 1191980, at *4 (S.D.N.Y. May 28, 2004).  In any event, given the likely availability of the third-party impleader, Union cannot be deemed an indispensable party at this point in the litigation under the equitable test embodied in Rule 19(b).

**B.**

The NCC Defendants also move to dismiss the claims against them on the basis that Nanjing has no standing to assert contract claims against NCC because there is no privity of contract between NCC and Nanjing, given that NCC maintains that the contracts it entered into were actually with Union.  In order to establish standing, the plaintiff must show that (1) it has suffered an actual or imminent injury in fact, which is concrete or particular; (2) there is a causal connection between the injury and defendant's actions; and (3) it is likely that a favorable decision in the case will redress the injury.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  The plaintiff, as the party asserting the Court's federal jurisdiction, bears the burden of proof on each of these

elements.  Id. at 561.  However, at the pleading stage, the
plaintiff's general factual allegations will suffice because, on
a motion to dismiss, the court will "presume[e] that general
allegations embrace those specific facts that are necessary to
support the claim."  Id. (internal citation and quotation marks
omitted).  Although NCC argues that it did business only with
Union, which it understood to be the party with which it
contracted, at this stage Nanjing has adequately pleaded that it
contracted with NCC, that it suffered an actual injury as a
result of NCC's breach of contract, and that a favorable
decision on the merits would adequately redress the injury it
suffered.  Therefore Nanjing presently has standing to bring
this action.

## IV.

The defendants have also moved to dismiss various claims
pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure
to state a claim upon which relief can be granted.  The NCC
Defendants have also moved to dismiss a number of the causes of
action in the Amended Complaint asserted against NCC for failure
to state a claim.  In addition, the NCC Defendants move to
dismiss all the claims asserted against the individual
defendants Sobel and Cesaria.  The IDB Defendants have similarly
moved to dismiss all the causes of action asserted against them
in the Amended Complaint for failure to state a claim.  In its

Amended Complaint, Nanjing asserts claims for (1) breach of contract, (2) breach of an implied-in-fact contract, (3) breach of an implied-in-law contract, (4) breach of the covenant of good faith and fair dealing, (5) account stated, (6) unjust enrichment, (7) default on a guaranty, (8) fraud and deceit, (9) conspiracy to commit fraud, (10) aiding and abetting fraud, (11) fraudulent inducements, and (12) reclamation under NY UCC § 2-702. While these causes of actions are asserted against all the defendants, by Stipulation and Order dated February 6, 2006, Nanjing agreed to dismiss the IDB Defendants from the first, fifth, and seventh causes of action.

## A.

On a motion to dismiss, the allegations in the complaint are accepted as true. See Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998). In deciding a motion to dismiss, all reasonable inferences are drawn in a plaintiff's favor. See Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995); Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). Therefore, the defendants' motion to dismiss should only be granted if it appears that the plaintiff can prove no set of

facts in support of its claims that would entitle it to relief.
See Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 514 (2002);
Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Grandon, 147 F.3d
at 188; Goldman, 754 F.2d at 1065.

In deciding the motion, the Court may consider documents
that are referenced in the complaint, documents that the
plaintiff relied on in bringing suit and that are either in the
plaintiff's possession or that the plaintiff knew of when
bringing suit, or matters of which judicial notice may be taken.
Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002);
see also Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d
Cir. 1993); Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d
42, 47-48 (2d Cir. 1991); VTech Holdings Ltd. v. Lucent Techs.,
Inc., 172 F. Supp. 2d 435, 437 (S.D.N.Y. 2001).  "[W]hen a
plaintiff chooses not to attach to the complaint or incorporate
by reference a document upon which it relies and which is
integral to the complaint, the court may nonetheless take the
document into consideration in deciding the defendant[s'] motion
to dismiss, without converting the proceeding to one for summary
judgment."  Int'l Audiotext Network, Inc. v. AT & T Co., 62 F.3d
69, 72 (2d Cir. 1995) (internal citation and quotation marks
omitted); see In re Loral Space & Communications Ltd. Secs.
Litig., No. 01 Civ. 4388, 2004 WL 376442, at *2 (S.D.N.Y. Feb.
27, 2004); Yucyco, Ltd. v. Republic of Slovenia, 984 F. Supp.

209, 215 (S.D.N.Y. 1997).  Accordingly, the facts alleged in the Amended Complaint are accepted as true for the purposes of this motion.[4]

**B.**

**1.**

NCC moves to dismiss Nanjing's first cause of action for breach of contract because (1) the contract was actually formed between Union and NCC and because (2) Nanjing has failed to plead properly the terms of the contract.

Under New York law, in an action for breach of contract the plaintiff must allege (1) the existence of a contract, (2) plaintiff's performance of that contract, (3) defendant's breach of the contract, and (4) damages.  Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525 (2d Cir. 1994); Pro Bono Investments, Inc. v. Gerry, No. 03 Civ. 4337, 2005 WL 2429777, at *3 (S.D.N.Y. Sep. 30, 2005).  The allegations in the complaint must also include the terms of the agreement upon which the action is based.  Leepson v. Allan Riley Co., Inc., No. 04 Civ. 3720, 2006 WL 2135806, at *3 (S.D.N.Y. July 31, 2006); Chrysler Cap. Corp. v. Hilltop Egg Farms, Inc., 514 N.Y.S.2d 1002, 1003 (App. Div. 1987).

---

[4] The parties agree that New York substantive law should be applied in this diversity action and the Court can accept that agreement.  See Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc., 187 F.3d 229, 239 n.4 (2d Cir. 1999); Tehran-Berkeley Civil & Envtl. Eng'rs v. Tippetts-Abbett-McCarthy-Stratton, 888 F.2d 239, 242 (2d Cir. 1989).

Accepting the facts in the Amended Complaint as true and drawing all inferences in favor of the plaintiff, Nanjing has adequately pleaded a cause of action for breach of contract against NCC. Nanjing alleges that individually and in combination, twenty-one separate delivery orders and invoices constituted a promise between Nanjing and NCC for Nanjing to deliver clothing to NCC and for NCC to pay Nanjing for that clothing. (Compl. ¶¶ 29, 48.) Nanjing alleges that it performed its duties by delivering the clothing and NCC breached its agreement by failing to pay for the clothing. (Id. ¶ 49.) Finally, the Amended Complaint details the alleged damages. (Id. ¶¶ 33-35, 49.) In sum, Nanjing has adequately pleaded a breach of contract cause of action against NCC. Therefore, NCC's motion to dismiss the first cause of action for breach of contract against NCC is **denied.**

### 2.

Both the IDB Defendants and the NCC Defendants move to dismiss Nanjing's second cause of action for breach of an implied-in-fact contract. Under New York law, a contract not expressly stated in oral or written terms may be implied from the conduct of the parties. See Maas v. Cornell University, 94 N.Y.2d 87, 93 (N.Y. 1999). However, an implied-in-fact contract "still requires such elements as consideration, mutual assent, legal capacity and legal subject matter." Id. at 93-94.

As against NCC, Nanjing has adequately alleged facts to support its claim for an implied-in-fact contract. Nanjing's delivery of the goods and NCC's acceptance of the goods (Compl. ¶ 20), combined with the past practices of the parties (See Compl. ¶¶ 27-29), are sufficient to support the inference that – even if there were no express agreement – an implied-in-fact contract existed between Nanjing and NCC. Therefore, NCC's motion to dismiss the second cause of action for breach of an implied-in-fact contract is **denied.**

However, as against the IDB Defendants, Nanjing has failed to allege any contact or communication between the IDB Defendants and Nanjing. There is no allegation that the IDB Defendants ever ordered goods, accepted goods, or agreed to make any payments to Nanjing. Given the lack of any alleged facts suggesting the formation of an implied-in-fact contract between Nanjing and the IDB Defendants, the IDB Defendants' motion to dismiss the second cause of action is **granted.**

### 3.

The IDB Defendants alone move to dismiss the third cause of action for breach of an implied-in-law contract and the sixth cause of action for unjust enrichment. Applying New York law, the Court analyzes these claims together as a single quasi-contract claim. See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005). To

recover on either of these grounds, New York law requires the plaintiff to establish the following: "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." Id. (quoting Revson v. Cinque & Cinque P.C., 221 F.3d 59, 69 (2d Cir. 2000)).

Nanjing has failed to allege any facts that suggest any sort of communication or contact between the IDB Defendants and Nanjing. Nanjing has not alleged that it delivered any goods or services to the IDB Defendants or that the IDB Defendants accepted any goods or services from Nanjing. All of the allegations in the Amended Complaint state only that the shipments were sent to NCC and that NCC was to pay for the goods. The relationship of the IDB Defendants was with NCC and not with Nanjing. Cf. Redtail Leasing, Inc. v. Bellezza, No. 95 Civ. 5191, 1997 WL 603496, at *8 (S.D.N.Y. Sep. 30, 1997) (stating that under New York law an unjust enrichment claim "requires some type of direct dealing or actual, substantive relationship with a defendant."); Metro. Elec. Mfg. Co. v. Herbert Constr. Co., Inc., 583 N.Y.S.2d 497, 498 (App. Div. 1992) (holding that a plaintiff supplier had no claim for unjust enrichment against a general contractor and the property owners where the improvements were ordered by a subcontractor, even if

the general contractor and the property owners consented to the
improvements).

For these reasons, the IDB Defendants' motion to dismiss
the quasi-contract actions contained in counts three and six are
**granted.**

**4.**

Both NCC and the IDB Defendants move to dismiss the fourth
cause of action for breach of the covenant of good faith and
fair dealing.  This claim is duplicative of the breach of
contract claim and the motion to dismiss the claim is **granted** as
to all defendants.  See Concesionaria DHM, S.A. v. Int'l Fin.
Corp., 307 F.Supp.2d 553, 564-65 (S.D.N.Y. 2004); Alter v.
Bogoricin, 97 Civ. 0662, 1997 WL 691332, at *7 (S.D.N.Y. Nov. 6,
1997); see also Casalino Interior Demolition Corp. v. Custom
Design Data, Inc., 653 N.Y.S.2d 35, 36 (App. Div. 1995) ("The
appellant is entitled to dismissal of the plaintiff's second
cause of action, alleging a breach by the appellant of the
implied covenant of good faith.  Such a breach is merely an
element of the damages for the breach of contract alleged in the
plaintiff's first cause of action.").

**5.**

NCC moves to dismiss the fifth cause of action for account
stated.  An account stated is an "agreement, express or

implied... independent of the underlying agreement, as to the amount due on past transactions." Leepson, 2006 WL 2135806, at *4 (quoting 1 N.Y. Jur.2d Accounts & Accounting § 10 (West 2006)).  For an account stated claim, the plaintiff must allege that (1) an account was presented, (2) the account was accepted as correct, and (3) the debtor promised to pay the amount stated.  Garcia v. Spanish Broadcasting System, Inc., No. 92 Civ. 7694, 1993 WL 177936, at *3 (S.D.N.Y. May 17, 1993); Leepson, 2006 WL 2135806, at *4.

In this case, there is no allegation that an account was presented in the amount of $2,144,637.56, which Nanjing claims is due.  Rather, Nanjing merely claims that the parties have acknowledged that amount is due, which is based on documents within the parties possession.  (Compl. ¶ 65.)  Because Nanjing has failed to allege that an account was presented, accepted as correct, and promised to be paid, NCC's motion to dismiss the claim for account stated is **granted.**

## 6.

NCC further moves to dismiss Nanjing's seventh cause of action for default on a guaranty.  A guaranty is an instrument guaranteeing payment of another's debt.  See Cavendish Traders, Ltd. v. Nice Skate Shoes, Ltd., 117 F.Supp.2d 394, 400 (S.D.N.Y. 2000).  Nanjing's complaint alleges only that NCC owes Nanjing money for delivered goods and that it orally promised to pay.

The complaint does not allege that NCC defaulted on a guaranty to pay the debt of another to Nanjing.  Therefore, NCC's motion to dismiss the seventh cause of action for default on a guaranty is **granted.**

### 7.

Causes of action eight through eleven allege various charges of fraud against the defendants.  The NCC Defendants and the IDB Defendants both move to dismiss these fraud counts because Nanjing has failed to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b).

Under New York law, a claim for fraud based on false statements must allege the following five elements: (1) a material false representation of an existing fact; (2) made with knowledge of its falsity; (3) with an intent to defraud; (4) reasonable reliance; (5) and damages.  See, e.g., Cohen v. Koenig, 25 F.3d 1168, 1172 (2d Cir. 1994); Dooner v. Keefe, Bruyette & Woods, Inc., 157 F.Supp.2d 265, 277 (S.D.N.Y. 2001); Channel Master Corp. v. Aluminum Ltd. Sales, Inc., 151 N.E.2d 833, 835 (N.Y. 1958).

In addition, Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Rule 9(b) requires that a complaint "adequately specify the statements it claims were false or misleading, give particulars as to the respect in

which plaintiff contends the statements were fraudulent, state
when and where the statements were made, and identify those
responsible for the statements."  <u>Cosmas v. Hassett</u>, 886 F.2d 8,
11 (2d Cir. 1989).

The broad allegations contained in Nanjing's Amended
Complaint that "[d]efendants have made false representations of
present material facts with intent to deceive plaintiff" (Compl.
¶ 77) do not satisfy the particularity requirements of Rule
9(b).  As such, the defendants' motions to dismiss the fraud
counts – causes of action eight through eleven – are **granted.**

### 8.

Both the NCC Defendants and the IDB Defendants move to
dismiss the twelfth cause of action for reclamation based on NY
UCC § 2-702.  For the reasons stated above, the plaintiff has
failed to allege sufficient facts to support a claim for
reclamation and the defendants' motions to dismiss the twelfth
cause of action are **granted.**

### C.

The NCC Defendants also argue that all claims against
individual defendants Charles Sobel, Robert Cesaria, and Marvin
Newman[5] must be dismissed because in New York, corporate officers
and shareholders are not liable for corporate debts or breaches

---

[5] Although individual defendant Marvin Newman is not represented by counsel
for the NCC Defendants, counsel for the NCC Defendants correctly note that
these arguments with respect to Sobel and Cesaria also apply to Newman.

of contract unless the corporate veil is pierced.  See Cohen, 25

F.3d at 1173; Puma Indus. Consulting, Inc. v. Daal Associates,

Inc., 808 F.2d 982, 986 (2d Cir. 1987); England Strohl/Denigris,

Inc. v. Weiner, 538 F.Supp. 612, 614 (S.D.N.Y. 1982).

To the extent that Nanjing attempts to hold the individual

defendants liable for direct participation in a fraud, the

plaintiff has failed to allege fraud with particularity,

including what fraudulent misrepresentations the individual

defendants allegedly made or in which they participated.  To the

extent Nanjing has attempted to hold the individual defendants

liable for the debts of NCC, such as any claimed liability for

breach of contract, the plaintiff has failed to plead a basis

for such liability.  The plaintiff has not attempted to plead

facts sufficient to pierce the corporate veil of NCC and hold

its shareholders or officers liable.  See, e.g, Morris v. New

York State Dep't of Taxation & Fin., 623 N.E.2d 1157, 1160-61

(N.Y. 1993) ("[P]iercing the corporate veil requires a showing

that: (1) the owners exercised complete domination of the

corporation in respect to the transaction attacked; and (2) that

such domination was used to commit a fraud or wrong against the

plaintiff which resulted in the plaintiff's injury."); JSC

Foreign Econ. Ass'n, 306 F.Supp.2d at 485 (listing ten factors

to be considered in determining whether to pierce the corporate

veil).  All that the plaintiff has alleged thus far is that

Newman and Cesaria are 50 percent owners of NCC (Compl. ¶¶ 7, 26) and that Sobel is an officer of NCC and Nanjing's contact at NCC (Compl. ¶ 7). These allegations are insufficient to allege a claim against the individual defendants for the alleged liability of NCC. See, e.g., Value Time, Inc. v. Windsor Toys, Inc., 709 F.Supp. 436, 438 (S.D.N.Y. 1989) (holding that a corporate officer could not be held liable for the corporation's alleged breach of contract where he was acting in his official capacity as an officer); We're Associates Co. v. Cohen, Stracher, Bloom, P.C., 478 N.Y.S.2d 670, 673 (App. Div. 1984) ("[I]n the absence of some constitutional, statutory or charter provision, the shareholders of a corporation are not liable for its contractual obligations and... parties having business dealings with a corporation must look to the corporation itself and not the shareholders for payment of their claims.").

Nanjing argues that the individual defendants should be held liable on the theory that they are actually partners of and with the corporation of NCC. This argument ignores New York corporate law and is without basis. See, e.g., People v. Zinke, 555 N.E.2d 263, 267 (N.Y. 1990) ("[L]imited partnerships and corporations are distinctly different organizational forms in the law of New York."); see also Puma Indus. Consulting, 808 F.2d at 986 (distinguishing an individual's liability in the corporate and partnership context).

For these reasons, all the claims against Sobel, Cesaria, and Newman are dismissed.

## CONCLUSION

In sum, the plaintiff's request for preliminary relief in the form of (1) an order to seize apparel in defendants' possession, (2) an attachment of defendants' assets, and (3) a preliminary injunction is **denied.**

The defendants' motion to dismiss the Amended Complaint is **granted in part** and **denied in part**. All causes of action are dismissed with the exception of the first, second, third, and sixth causes of action remaining against NCC.

Because it cannot be said that plaintiff cannot replead various causes of action, or assert new claims, the plaintiff may file an amended complaint within **twenty days** of the date of this order.

**SO ORDERED.**

Dated: New York, New York
       August /( 2006

                                    John G. Koeltl
                                    United States District Judge

36